TRISHMAN, APPELLANT, *v.* J. C. PENNEY CASUALTY INSURANCE CO., APPELLEE.

(No. 77AP-197—Decided July 21, 1977.)

*Messrs. Feibel, Feibel, Shamansky, Rogovin & Snyder,* for appellant.

*Messrs. Glander, Brant, Ledman & Newman,* for appellee.

WHITESIDE, J. Plaintiff appeals from a judgment of the Franklin County Court of Common Pleas, raising a single assignment of error contending that "the judgment rendered by the trial court is against the weight of the evidence and contrary to law."

Defendant issued a policy of insurance insuring the life of plaintiff's late husband with coverage in the amount of $17,500 in case of death and additional coverage in the amount of $17,500 if death resulted from accidental bodily injury (double indemnity).

The case was submitted to the trial court upon stipulated facts. Plaintiff's husband was employed as a pilot by Anchor Hocking Corporation of Lancaster, Ohio, and

was killed on December 27, 1974, near Lancaster in the crash of an airplane owned by Anchor Hocking. An "aviation exclusion" rider was attached to the insurance policy and provided:

"Regardless of any contrary provision, the Company's liability under this policy shall be limited to the amount of premiums paid plus interest of 3% per annum compounded annually if the Insured's death results directly or indirectly from riding in or descent from any kind of aircraft *when* the Insured participated in training or had any duties whatsoever aboard such aircraft * * *." (Emphasis added.)

The accidental death benefit provision of the policy contained a provision excluding any coverage for accidental death, reading essentially identical to the above except that the word "if" is substituted for the italicized word "when," and there is no provision for the return of premiums paid.

It was stipulated that the plane in which plaintiff's husband was killed "requires a crew of two (2) members, a pilot and copilot" and that, at the time of the crash, "the pilot's and copilot's seats of said aircraft were operated by persons other than the insured." It was also stipulated that "the flight controls of said aircraft are operated from the pilot or copilot seats."

The trial court held that the exclusion applied, and that no death benefits were payable under the policy, holding in part that: "If within a reasonable period of time before a fatal crash it is shown that the insured's death resulted from his riding in an aircraft when he either was participating in training or had any duties whatsoever aboard that aircraft the insured fell under the exclusion clause of the policy. * * *"

Plaintiff in her brief sets forth her position in part, as follows:

"1. The law of Ohio places upon Defendant the burden of proof that the insured's death comes within the aviation exclusion clause;

"2. The aviation exclusion clause is ambiguous and

therefore must be construed against the Defendant;

"3. If the aviation exclusion clause is construed against the Defendant, it must be construed to mean that the insured must have been participating in training or engaged in the performance of duties aboard the aircraft at the time of his death and not at some time prior thereto;

"4. Defendant has the burden of proving that the insured was engaged in the performance of duties or was participating in training at the time of his death; * * *."

Defendant, on the other hand, contends that plaintiff's interpretation of the exclusion clause is incorrect and that it is not necessary that the insured must have been actually participating in training or engaged in the performance of duties at the time of his death so long as that was the purpose of his being on the aircraft at the time, regardless of what he may have been doing at the time of the crash. Both parties cite cases from other jurisdictions in support of their contentions, which are annotated in 45 A. L. R. 2d 454, entitled, "Who is member of crew within aeronautics clause of life or accident policy." However, none of those cases are particularly helpful since they involve exclusion clauses differing in language from the one herein involved, many of which specifically exclude coverage if the insured is killed in the crash of an aircraft in which he is a member of the crew. Although the evidence does permit a finding that plaintiff's husband was a member of the crew of the aircraft, that fact alone is not sufficient to sustain a denial of coverage under the policy in question, which is more specific in its terms.

Since we find that it is not material to this case which construction of the exclusion clause is adopted, we shall, for purposes of this case, construe the exclusion clause as contended by plaintiff to mean that the insured must have been participating in training or engaging in the performance of duties aboard the aircraft at the time of the crash of the aircraft in order for coverage to be excluded.

With regard to whether the exclusion clause as so interpreted is applicable, plaintiff contends in her brief that:

"5. The evidence establishes that the manner in which the insured participated in training was to temporarily fly the plane from the copilot's seat, which he was not doing at the time of his death;

"6. The insured's duties aboard the aircraft were to engage in training, and the insured was not engaged in training at the time of his death as herebefore stated; and

"7. The insured not having participated in training nor been engaged in the performance of duties at the time of the crash, Defendant failed to meet its burden of proof that the aviation exclusion clause applied to preclude coverage under the insurance policy."

Since all three persons aboard the aircraft were killed in the crash, it is impossible by direct evidence to prove what plaintiff's husband was doing at the time of the crash, although it is stipulated that he was not acting as either pilot or copilot at that time. The flight in question was originally from Lancaster to Denver, Colorado, to transport the chairman of Anchor Hocking Corporation. It was on the return flight that the crash occurred. It was stipulated that the chairman of Anchor Hocking would testify as follows:

" 'John Siefert also said he was taking Tom Trishman, our pilot trainee, on this trip because he wanted to use this trip as an opportunity for a training flight.

" 'Take-off about 2:00 p. m. was normal. John Squires was in the captain's seat with John Siefert as copilot. Tom Trishman was on the jump seat between and just to the rear of the two pilots. The flight was uneventful and took about three and one-half hours because of strong headwinds. After we leveled out at our cruising altitude following take-off, John Siefert surrendered the co-pilot's seat to Tom Trishman. Siefert visited with us briefly, and I remember a specific discussion about the airplane in which he told me how pleased he was with its performance. Siefert then stood between the two pilots' seats until we

were about an hour and a half out of Denver, when he replaced Squires in the captain's seat. Shortly before arriving in Denver, Squires moved to the co-pilot's chair and Tom Trishman resumed his position in the jump seat. This was the position of the pilots for a routine landing in Denver. As far as I know, the pilots did not enter the terminal. I did not witness the take-off for Lancaster.' "

The trial court, in its original decision, expressly found in part:

"While no testimony is available as to which crew member was doing what at the time of the crash a later investigation of the wreckage would permit an inference that the chief pilot occupied the pilot's seat, Squires occupied the right front, or co-pilot's seat, and decedent occupied the jump seat behind the pilot's seat. The aircraft can be physically operated from either of the two front seats but not from the jump seat.

"* * * Decedent was not just an ordinary passenger on the airplane at the time of the crash. He boarded the airplane as a part of the crew, and participated in the actual piloting of the airplane for a portion of the trip and was in training in connection with its operation during other portions of the trip. The question of who may have been responsible for the safety of the trip is not the deciding factor with regards to coverage under the aviation clause of this policy."

Following a motion for reconsideration by plaintiff, the trial court rendered a second decision which incorporated the original decision and additionally stated in part:

"We also believe the facts show that the insured's presence as a rider in the aircraft was as a participant in training aboard said aircraft * * *."

From the foregoing, we conclude that the trial court found that plaintiff's husband was participating in training aboard the aircraft at the time of the crash. Plaintiff contends, however, that the words "participated in training" should be limited in their interpretation to mean "temporarily flying the plane from the copilot's seat."

We reject such a narrow construction of the words "participated in training."

Plaintiff's interpretation would restrict training to "doing" and preclude "training by observation" as being within the exclusion clause. However, within the ordinary meaning of the word "training," it may be accomplished either by observation, verbal instruction, or doing, or a combination of these. The sole purpose of the presence of plaintiff's husband on the aircraft was to participate in training. It is a matter of common knowledge that the descent and landing of an airplane are crucial operations to be performed by the pilot. Training by way of observing operations of the pilot of the airplane would constitute participation in training within the meaning of the exclusion clause of the policy. Although it is true that there is, and could be, no direct evidence of what plaintiff's husband was actually doing at the time of the crash, the evidence reasonably permits an inference that, at the time of the crash, he was participating in training by way of observing the operation and procedures for descent and landing of the airplane. The trial court's finding to the effect that plaintiff's husband was participating in training at the time of the crash is supported by the evidence, even if the additional finding by the trial court that the exclusion clause applies regardless of whether plaintiff's husband was performing a duty at the time of the crash is erroneous. Accordingly, the assignment of error is not well taken.

For the foregoing reasons, the assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

REILLY and McCORMAC, JJ., concur.